**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Petitioner,<br><br>- v -<br><br>TAPESTRY MANAGEMENT SERVICES, INC., *et al.*,<br><br>Respondents. | : | 26 Misc. 545 |

**DECLARATION OF RACHAEL DOUD IN SUPPORT OF THE GOVERNMENT'S PETITION TO ENFORCE CIDS 26-014, 26-015, 26-016, 26-017 and 26-036**

I, Rachael Doud, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1. I am an Assistant United States Attorney in the United States Attorney's Office for the Southern District of New York. I am one of the attorneys representing the United States of America (the "Government") in a civil fraud investigation pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, concerning whether Tapestry Management Services, Inc., Tapestry Telehealth PLLC, Chess Medicine PLLC, Chess Medical PC, and Topaz Bay Senior Health PC, and/or their affiliates, owners, or employees (collectively, "Tapestry"), submitted or caused to be submitted false claims, false records, or false statements to federal healthcare programs in connection with billing for certain remote services designed to help manage patient health outside of face-to-face patient visits with healthcare providers. The United States Attorney's Office for the Southern District of New York ("SDNY USAO") is conducting this investigation together with the United States Attorney's Office for the Central District of California and the United States Department of Justice, Civil Division, Commercial Litigation Branch, Fraud Section (the "Civil Fraud Investigation Team").

### A. The Government's Civil Investigative Demands

2. On April 10, 2026, the SDNY USAO, with approval from the then U.S. Attorney for the Southern District of New York, issued Civil Investigative Demands ("CIDs") seeking responses to interrogatories and documents from Tapestry Management Services, Inc., Tapestry Telehealth PLLC, Chess Medicine PLLC, and Chess Medical PC. The SDNY USAO served the CIDs on these entities by certified mail. True and correct copies of these CIDs, which are respectively numbered 26-014, 26-015, 26-016, and 26-017, are attached hereto as Exhibits A, B, C, and D,

3. On August 28, 2026, the SDNY USAO, with approval from the U.S. Attorney for the Southern District of New York, issued a CID seeking responses to interrogatories and documents from Topaz Bay Senior Health PC. The SDNY USAO served the CID on this entity by certified mail. A true and correct copy of this CID, which is numbered 26-036 (together with CIDs 26-014, 26-015, 26-016, and 26-017, the "CIDs"), is attached hereto as Exhibit E. The CIDs seek information and documents that are not already in the Government's possession. Much of the requested material—including Tapestry's data and internal communications—is uniquely in Tapestry's possession.

4. Tapestry provides purported medical services to patients in skilled nursing facilities and bills Medicare and Medicaid for those services. Certain of the requests for production in the CIDs pertain to BetCo LTC Consulting, LLC, with which Tapestry contracted to extract information from patients' medical records and prepare reports, for which Tapestry subsequently billed Medicare.

5. Information obtained by the Civil Fraud Investigation Team in connection with its investigation[1] suggests that Tapestry frequently provided reports to facilities that, according to Tapestry, constitute Chronic Care Management ("CCM"), Remote Patient Monitoring ("RPM") or Behavioral Health Integration ("BHI") services, but were provided by Tapestry to the facilities months after the time period for which Tapestry reviewed patients' medical information. The Government also has reason to believe that Tapestry may have billed Medicare for CCM, RPM, and BHI services purportedly provided to patients who had not received initiating patient visits, did not have an established patient relationship with the provider, and/or had not provided consent for the services at issue. The Government further has reason to believe that Tapestry may have billed for CCM, RPM, or BHI services that otherwise did not meet program coverage requirements, including because Tapestry did not meet applicable thresholds for the amount of time spent providing the services.

6. On April 20, 2026, counsel for Tapestry contacted the Civil Fraud Investigation Team concerning the initial four CIDs. Over the course of the next four months, the parties engaged in discussions concerning the CIDs and Tapestry's response thereto, and Tapestry began producing documents and information in response to certain of the CID requests. Tapestry's counsel indicated that its response to the CIDs also included documents and information in the possession of affiliated entity Topaz Bay Senior Health PC, on which the SDNY USAO subsequently served a CID. Tapestry's initial productions focused on "low hanging fruit" that Tapestry could relatively easily gather in response to certain requests the Civil Fraud Investigation Team asked Tapestry to prioritize. Tapestry has at no point raised any argument that the CIDs were not properly authorized or served or contested that the FCA authorizes the Government to

[1] The Government is prepared to provide further details regarding this information on an *ex parte* basis if the Court requests.

obtain the type of information requested in the CIDs. Nor has Tapestry argued that the subject matter of the CIDs is outside the scope of the Government's authority to investigate.

7. To date, Tapestry has produced a total of approximately 3,910 documents in partial response to Interrogatory Numbers 1, 2, 3, 5, 6, 8, 10, 11 and 12 and Document Request Numbers 2, 3, 4, 5, 7, 8, 22, 23, 24, 25, 40 and 41.

8. On June 8, 2026, Tapestry provided responses and objections to certain of the Government's interrogatories. A true and correct copy of those responses and objections is attached hereto as Exhibit F.

9. Starting in June 2026, the parties began discussing parameters for Tapestry's search of its electronically stored information ("ESI"), including emails, for purposes of responding to certain of the CID requests. Tapestry has represented to the Government that it had at least 3,321 employees or other personnel who worked at the company during the time period under investigation. As part of the ESI collection process, Tapestry's counsel collected and processed the custodial data for thirty-six custodians, including eighteen custodians Tapestry had proposed and additional custodians requested by the Civil Fraud Investigation Team. A true and correct copy of a letter from Tapestry's counsel providing this information is attached hereto as Exhibit G. On August 18, 2026, at Tapestry's request, the Civil Fraud Investigation Team sent Tapestry's counsel a list of proposed search strings, consisting of twenty-two proposed strings. A true and correct copy of the Civil Fraud Investigation Team's email proposing those search strings is attached hereto as Exhibit H. Tapestry's counsel never provided any response concerning these proposed search strings.

**B. CMS's Suspension of Payments to Tapestry**

10. In 2026, the Center for Medicare & Medicaid Services ("CMS"), in consultation with the Department of Health and Human Services Office of Inspector General, elected to suspend

Medicare payments to certain Tapestry entities pursuant to 42 C.F.R. § 405.371(a)(2) and 42 C.F.R. § 405.372(a)(4), based on credible allegations of fraud.

11. CMS notified Topaz Bay Senior Health PC on February 19, 2026, that it had suspended Medicare payments to that entity, effective January 16, 2026, based on credible allegations of fraud. CMS notified Tapestry Telehealth PLLC on August 19, 2026, that it had suspended Medicare payments to that entity, effective August 11, 2026, based on credible allegations of fraud. CMS notified Chess Medicine PLLC on August 27, 2026, that it had suspended Medicare payments to that entity, effective August 13, 2026, based on credible allegations of fraud. CMS's decision to suspend payment to these entities was based on information that included, but was not limited to, complaints from numerous Medicare beneficiaries in which they stated that they did not receive the services billed by Tapestry and interviews with beneficiaries in which they stated that they did not receive the services billed by Tapestry.

**C. Tapestry Stops Complying with the CIDs**

12. On August 19, 2026, Tapestry's counsel informed the Civil Fraud Investigation Team by email that, in light of CMS's suspension of payments to Tapestry Telehealth PLLC and Chess Medicine PLLC, Tapestry would "stop all document production efforts immediately."

13. On August 24, 2026, the Civil Fraud Investigation Team sent Tapestry a letter stating that it could not elect to discontinue its production of documents and information in response to the CIDs and notifying Tapestry that it must take all appropriate measures to ensure the retention and preservation of documents and information that may be relevant to the Civil Fraud Investigation Team's investigation. The Civil Fraud Investigation Team also requested that Tapestry provide information relevant to its financial condition and complete its production of

certain limited categories of documents and information by September 10, 2026. A true and correct copy of the Civil Fraud Investigation Team's letter is attached hereto as Exhibit I.

14. On a telephone call on September 1, 2026, Tapestry's counsel stated that there were some documents that counsel had already collected from the company and reviewed and Tapestry would produce those documents but Tapestry would not otherwise continue responding to the CIDs. Tapestry made that production, which consisted of 1,100 documents, on September 3, 2026.

15. On September 30, 2026, Tapestry's counsel informed the Civil Fraud Investigation Team that the decision to suspend compliance with the CIDs had been a "business decision" by Tapestry executives. Tapestry's counsel conveyed that, pursuant to that business decision, Tapestry had stopped ingesting additional data to respond to the CIDs.

16. On October 8, 2026, the Civil Fraud Investigation Team followed up on its discussions with Tapestry's counsel and, *inter alia*, reiterated its requests for the documents and information it had asked Tapestry in prior communications to prioritize. The Civil Fraud Investigation Team noted that it had asked Tapestry to prioritize information related to audits of Tapestry and its affiliates and that, while Tapestry had produced an audit log listing audits conducted of Tapestry and its affiliates and the document contains easy-to-follow hyperlinks leading to corresponding audit documentation on the company's systems, Tapestry had failed to produce the underlying audit documentation, which was clearly responsive.

17. On a phone call on October 9, 2026, Tapestry's counsel acknowledged that Tapestry had thus far searched for materials concerning investigations or audits largely by using search terms pertaining to just one particular audit that was conducted. Tapestry's counsel suggested that Tapestry would consider producing the audit documentation that could be accessed by clicking on the links in the audit log, but not any other materials responsive to the CIDs. On October 21, Tapestry made a production that included some such documents as well as one

spreadsheet concerning Tapestry's finances. At that point, the Civil Fraud Investigation Team understood from Tapestry's counsel that no further efforts to comply with the CIDs were underway and no additional productions were currently planned.

18. On November 2, 2026, the Civil Fraud Investigation Team met and conferred with Tapestry's counsel about the Civil Fraud Investigation Team's anticipated petition to enforce the CIDs. On the call, Tapestry's counsel did not indicate that Tapestry was currently undertaking any further efforts to respond to the CIDs.

19. On November 3, Tapestry's counsel informed the Civil Fraud Investigation Team that they had spoken to Tapestry following the meet-and-confer and begun processing a production of additional financial information requested by the Civil Fraud Investigation Team. Tapestry's counsel further stated that Tapestry was "continuing to evaluate whether there are additional responsive materials it can collect and prepare for production to you, without the burdensome expense of ESI review." Tapestry's counsel did not commit to producing any particular materials or undertaking an ESI review. The Government received the referenced production, consisting of one document, at approximately 5:00 pm on November 3.

20. Tapestry has never filed any petition to modify the CIDs or set them aside. Tapestry likewise has not raised any argument that the CIDs were not properly authorized or served and has not contested that the FCA authorizes the Government to obtain the type of information requested in the CIDs. Nor has Tapestry argued that the subject matter of the CIDs is outside the scope of the Government's authority to investigate. Tapestry has acknowledged that it is in possession of a large number of documents responsive to the Government's CIDs.

21. As of the date Tapestry ceased complying with the CIDs, it had partially responded to the following interrogatories and document requests: Interrogatory Numbers 1, 2, 3, 5, 6, 8, 10, 11 and 12 and Document Request Numbers 2, 3, 4, 5, 7, 8, 22, 23, 24, 25, 40 and 41. Tapestry had

not responded at all to the following interrogatories and document requests: Interrogatory Numbers 4, 7, 9, 13 and 14, and Document Request Numbers 1, 6, 9-21, 26-39, and 42-46. Tapestry has not produced any data concerning the CCM, RPM, and BHI services it purportedly provided. Further, Tapestry has not conducted a general ESI review and has instead produced employees' emails or other ESI concerning only a very limited number of discrete topics.

**D. Tapestry's Medicare Billing**

22. After the SDNY USAO issued its initial four CIDs, Tapestry began billing through two additional clinical entities, Emerald Fern Wellness PC and Rosewood Hills Healthcare PC. Tapestry began billing through Rosewood Hills Healthcare PC on April 11, 2026, and through Emerald Fern Wellness PC on April 17, 2026.

23. According to CMS claims data that has been analyzed by the Civil Fraud Investigation Team, the following Tapestry entities have collectively billed Medicare Part B more than $800 million since 2020: Tapestry Telehealth PLLC, Chess Medicine PLLC, Chess Medical PC, Topaz Bay Senior Health PC, Rosewood Hills Healthcare PC, and Emerald Fern Wellness PC. Of this total, approximately (1) $320 million was allowed by Medicare (the allowed amount includes the amounts paid by Medicare plus any coinsurance); and (2) approximately $248 million was paid by Medicare. The vast majority of these amounts were for CCM, RPM, and BHI services.

24. In 2026 alone, the above-referenced Tapestry entities billed Medicare Part B approximately $158 million, with approximately $68 million allowed and $53 million paid by Medicare.

25. For years, Tapestry's founder and part-owner, Dr. David Chess, was listed as the rendering provider on the majority of Tapestry's Part B claims. In 2023, for example, Dr. Chess was listed as the rendering provider on 100% of Tapestry's Part B claims, which were billed by Tapestry Telehealth PLLC, Chess Medicine PLLC, and Chess Medical PC.

26. Data reviewed by the Civil Fraud Investigation team reflects that, for years, Chess was identified as the rendering provider on the highest volume of paid Medicare Part B claims for CCM, RPM, and BHI services collectively in the nation, as compared against all other rendering providers for these services in the nation. Specifically, Chess was the top-ranked provider in terms of amounts paid for CCM, RPM, and BHI services in 2022, 2023, 2024, and 2025. Paid Medicare Part B claims on which Dr. Chess is listed as the rendering provider have totaled more than $140 million since 2020, including more than $45 million in 2025 and 2026.

27. According to analysis conducted by the Department of Justice, CMS's payment suspensions to Tapestry entities have resulted in a total of $4,767,211 being held in suspension.

Dated: November 3, 2026
New York, New York

*Rachael Doud*
RACHAEL DOUD
Assistant U.S. Attorney